UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ESTHER WATSON** | **CASE NO. 3:20-CV-00527** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FRANKLIN PARISH SCHOOL BOARD, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

RULING

Plaintiff Esther Watson ("Ms. Watson"), an African American female, filed this lawsuit against Defendant Franklin Parish School Board (the "School Board"), all members of the School Board, and former Superintendent Dr. Lanny Johnson ("Dr. Johnson") and his "successor." Ms. Watson alleged a cause of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., as amended, that she was subjected to racial discrimination when she was not selected for a principalship position to which she applied.

This Court previously granted the School Board's Motion to Dismiss and dismissed all School Board members, as well as Dr. Johnson and his successors in their individual capacities [Doc. Nos. 7, 8]. Pending here is the School Board's Motion for Summary Judgment dismissing Ms. Watson's remaining Title VII racial discrimination claims against the School Board and against Dr. Johnson and "his successor" in their official capacities [Doc. No. 27]. Ms. Watson has filed an opposition [Doc. No. 33]. The School Board has filed a reply to the opposition [Doc. No. 36].

For the following reasons, the School Board's motion is GRANTED.

**I.      FACTS AND PROCEDURAL HISTORY**

Ms. Watson is a resident of Catahoula Parish and has been employed by the Catahoula Parish School Board for most of her career. Her teaching career began in 1973 when she was hired

by the Catahoula Parish School Board. She was promoted to a principalship position in 1994. She was promoted to the position of child welfare and attendance supervisor in 2002. She retired from the Catahoula Parish school system in 2008.

Shortly after her retirement, Ms. Watson applied for an assistant principalship position with the Franklin Parish School Board. Dr. Johnson recommended her to the School Board, and she was selected for the position in 2008. She worked at Fort Necessity school and then transferred to the assistant principalship position at Winnsboro Elementary School ("WES") in 2009. When the principal of WES resigned during the 2017-2018 schoolyear, Ms. Watson applied for the principalship position for the 2018-2019 schoolyear but was not selected.

On April 28, 2020, Ms. Watson filed this lawsuit alleging that she was not selected because of her race. Ms. Watson alleges that the School Board selected a Caucasian male, Scott McHand ("Mr. McHand") for the position solely because of his race and not because of his being the most qualified candidate.

On November 15, 2021, the School Board filed the pending motion seeking the dismissal of Ms. Watson's racial discrimination claim against the remaining defendants.

The issues are fully briefed, and the Court is prepared to rule.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). To rebut a properly supported motion for summary judgment, the

opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell,* 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

    **B.**    **Racial Discrimination**

To analyze whether a plaintiff has established a *prima facie* case of racial discrimination under Title VII based on circumstantial evidence, the Court applies the *McDonnell Douglas* framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (*per curiam*); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). Under that framework, a plaintiff must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4)

was ... treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the action. *Id.* at 557. If the employer does so, the burden shifts back to the plaintiff, who then must establish either that the employer's reason was pretext for discrimination or that the plaintiff's protected status was a motivating factor for the action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

### C.     Analysis

Ms. Watson bases her racial discrimination claim on circumstantial evidence. As an African American female, Ms. Watson is a member of a protected class. She applied for the position as principal of WES and was qualified for the position, but she was rejected for that position. The applicant selected for the position, Mr. McHand, is a Caucasian male. As such, Ms. Watson establishes a *prima facie* case for race-based discrimination.

The burden then shifts to the School Board to provide legitimate, non-discriminatory reasons for the selection of Mr. McHand. If the School Board is successful in doing that, then the burden shifts to Ms. Watson to establish that the School Board's proffered legitimate, nondiscriminatory reasons are false and/or merely pretext for discrimination and/or that her protected status was a motivating factor for the action.

The Court will first review the contentions of the parties and then state its own findings.

#### 1.     The School Board's Contentions

In providing nondiscriminatory reasons for choosing Mr. McHand over Ms. Watson, the School Board states that Dr. Johnson relied upon a variety of factors including educational

5

credentials, certification, experience, interview scores, and personal knowledge of each employee's work history. Looking at these factors as a whole, according to the School Board, Dr. Johnson deemed Mr. McHand to be better qualified for the position than Ms. Watson.

Both parties had similar educational backgrounds and were certified for the position. The School Board shows that Mr. McHand and Ms. Watson both hold master's degrees in education, with Ms. Watson earning a master plus 30 by taking an additional 30 hours of graduate course work (date unknown), and Mr. McHand earning a second degree, Master of Educational Leadership, in 2018. The School Board states that, at best, Ms. Watson and Mr. McHand were equally qualified from an educational standpoint; however, arguably, Mr. McHand's educational qualifications are superior than Ms. Watson as he has a master's degree with a focus on educational leadership, whereas Ms. Watson holds no such specialized degree.

The candidates were interviewed by a diverse five-person interview committee. The procedure is that the interview committee provides the top scores to the superintendent who in turn is responsible for selecting the candidate. The School Board acknowledges that Ms. Watson scored slightly higher than Mr. McHand in the interview; however, the School Board states that it was upon consideration of the candidates as a whole that Dr. Johnson determined that Mr. McHand was better qualified than Ms. Watson for the position

The School Board asserts, specifically, that Dr. Johnson considered Ms. Watson's status as a retiree who returned to work, coupled with the fact that she had worked her entire 35 year career until her retirement with the Catahoula Parish School Board (the parish in which she resides), and determined that it was unlikely she would remain in the position for the long term. In comparison, Mr. McHand resides in Franklin Parish, his children go to school in the Franklin Parish school

6

system, and he had recently obtained his educational leadership degree with the goal of becoming an administrator. The School Board argues that it was perfectly reasonable for Dr. Johnson to conclude that Mr. McHand would be more likely to remain in the position for the long term and thus was better qualified.

The School Board additionally asserts that, when selecting an individual for a principalship position, consideration as to which candidate is most likely to remain in the position for the long term is a valid and legitimate consideration. In support of that assertion, the School Board cites the testimony of Watson's own witness, Ronald Lofton, the Superintendent of the Catahoula Parish school system, that while a candidate may have more experience, there are other factors to consider, one of which would be to seek out a candidate that would likely remain in the position for multiple years [Ronald Lofton Deposition, Doc. No. 27-14, p. 2]

The School Board finally states that, in looking at employment history, Dr. Johnson recalled being contacted by the Louisiana Department of Education to raise concerns regarding testing protocols being implemented by Ms. Watson. Dr. Johnson further recalled concerns raised by the School Board's Child Welfare and Attendance division with respect to a lack of discipline at WES during Ms. Watson's tenure as assistant principal. While these concerns were not the focus of Dr. Johnson's decision, he testified that such matters remained in his mind and were a consideration, albeit to a lesser degree.

The School Board concludes that Dr. Johnson looked at multiple factors and reasonably reached the conclusion that Mr. McHand was the most qualified candidate for the position. Thus, according to the School Board, it has submitted legitimate, non-discriminatory reasons for the selection of Mr. McHand.

### 2. Ms. Watson's Contentions

Ms. Watson responds that the School Board's proffered reasons are false and are merely pretext for discrimination. She asserts that Dr. Johnson's assumption that she would retire early was unfounded and had no basis in fact. She states that Dr. Johnson's concern that she lived in another parish and was not part of the local community is suspect. She further states that she interacted freely with the Franklin Parish community during the eight (8) years she was an assistant principal, that she was experienced in child rearing and served as an over sixty (60) year old mother/grandmother figure to many of the poor children in Franklin Parish, and that WES went from a "F" school to a "B" school under her leadership as assistant principal. She states that any notion that a forty (40) year old Caucasian male could relate better to the school, students, and community is misplaced and false.

Ms. Watson offers the deposition testimony of Leodis Norman ("Norman"), a former teacher at WES, concerning a conversation he overheard in a meeting between Dr. Johnson and Reverend Roosevelt Grant ("Rev. Grant"), a local leader of the NAACP, concerning the alleged lack of African Americans in leadership positions in the Franklin Parish school system. She asserts that Dr. Johnson stated in that conversation this was because there were no qualified African American applicants, which she suggests shows Dr. Johnson's mindset to ignore qualified African American applicants for leadership positions, including herself.

Ms. Watson further argues that she has proven pretext by establishing that she was clearly better qualified than Mr. McHand. It is well-settled that where the employer's proffered reason for refusing to hire or promote an employee is that it selected the "best qualified" candidate, pretext may be inferred by evidence of the plaintiff's superior qualifications: "[Q]ualifications evidence

8

may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 US 454, 456-457 (2006); *Farver v. McCarthy* (8th Cir. 2019) 931 F3d 808, 812].

Ms. Watson admits that she and Mr. McHand have similar educational backgrounds and that they both have the qualifications for a principalship position. She states, however, that she has ten (10) additional certifications while Mr. McHand has none. She further states that she taught for nineteen (19) years; was a principal in the Catahoula Parish School system for eight (8) years; was an assistant principal in the Franklin Parish School system for ten (10) years; and was the acting principal of WES for one (1) month prior to applying to be principal of WES. On the other hand, Mr. McHand only taught for eight (8) years in the Franklin Parish School system before becoming principal of WES. She states, therefore, she was clearly better qualified.

Finally, she asserts there is "follow-up" evidence that she was clearly better qualified. She states that she is still working in the Catahoula Parish school system with no retirement plans; whereas, under the tutelage of Mr. McHand, WES suffered. She asserts that Mr. McHand's leadership style clashed with several teachers. As a result, some skilled teachers left the school, and the testing scores went down while student discipline went up. She states Mr. McHand lasted three (3) years at Winnsboro Elementary and has been given another principal position at another Franklin Parish school.

Ms. Watson concludes that she has shown that the School Board's proffered legitimate, nondiscriminatory reasons are false and that she was clearly better qualified.

### 3. The School Board's Reply

The School Board replies that Ms. Watson has submitted no competent evidence that the decision not to hire her was based on a discriminatory motive and/or that the legitimate,

nondiscriminatory reason for making the selection was pretext for discrimination. The School Board asserts that Dr. Johnson's consideration as to the length of time each candidate was likely to remain in the position was valid and legitimate and that Ms. Watson has produced no evidence to support her conclusory assertion that such reason was somehow "suspect."

The School Board further replies that Mr. Norman's testimony as to the meeting between Mr. Grant and Dr. Johnson is not evidence of pretext. The School Board states that Mr. Norman was a disgruntled former employee whose recollection of the meeting was so poor that he could not even recall the purpose of the meeting, which had nothing to do with Ms. Watson or her non-selection to the position of principal [Norman Deposition, Doc. No. 36-1, p. 3.]. Rather, the purpose of the meeting was to discuss Mr. Norman's complaints with respect to Mr. McHand, who was Mr. Norman's supervisor at the time of the meeting [Grant Affidavit, Doc. No. 36-2]. Rev. Grant attended the meeting on behalf of Mr. Norman with respect to his complaints against Mr. McHand, which occurred on April 5, 2019, long after Mr. McHand was selected to the position prior to the start of the 2018-2019 school year [Id.].

The School Board states that during the meeting, Rev. Grant took the opportunity to discuss his concerns about hiring practices in the district; however, Rev. Grant's affidavit does not indicate that he asked about the reasons Ms. Watson was not selected for the position, nor does he indicate that Dr. Johnson made any statement to the effect of there being no certified African American candidates for principalship positions, generally or with respect to Ms. Watson [Id.]. Rather, according to Rev. Grant, he was discussing generally the NAACP's position with respect to the hiring of African American individuals to leadership positions, not with respect to Ms. Watson specifically, wherein Ms. Watson was used as an example along with several others [*Id.*].

10

When questioned about the meeting, Dr. Johnson could not specifically recall the discussion but did explain that he may have commented about a lack of certified candidates in a general way because during his tenure as Superintendent of Franklin Parish School Board, there were leadership positions available for which no certified African American candidates had applied [Johnson Depo., Doc. No. .27-7, p. 9].

The School Board additionally replies that the evidence does not show that Ms. Watson was clearly better qualified than Mr. McHand. Although Ms. Watson argues that a side by side comparison shows she had more certifications, the School Board asserts that the content of the certifications clearly shows that such are not related to the qualifications necessary to be a school principal, the position at issue in this case. From the period of 1979 through 2001 Ms. Watson obtained a number of certifications from the Louisiana Department of Education in areas such as child welfare and attendance, adult education, supervisor of student teaching, adaptive PE, and driver/traffic safety education. The School Board argues that, while a few of these certifications may have had some relationship to supervision of employees (such as supervision of student teaching), such certifications do not necessarily make an individual more or less qualified to serve as a school principal.

The School Board submits that, while both Ms. Watson and Mr. McHand maintained the necessary and relevant qualifications and certifications, Mr. McHand not only had all required credentials and qualifications, but he also demonstrated a superior educational background with respect to the specific position at issue (i.e., master's degree in educational leadership).

11

### 4. The Court's Findings

This Court finds that the School Board has provided legitimate, nondiscriminatory reasons for the adverse action. The School Board has cited that Dr. Johnson relied upon a variety of factors including educational credentials, certification, experience, interview scores, and personal knowledge of each employee's work history.

Because the School Board provided legitimate, nondiscriminatory reasons for the adverse action, the burden shifts back to Ms. Watson to show that the reasons were pretextual or that her protected status was a motivating factor in her not being promoted. *See Alvarado*, 492 F.3d at 611.

The Court finds that Ms. Watson has failed to make such a showing. Dr. Johnson's consideration as to the length of time each candidate was likely to remain in the position was a valid concern, especially considering that Ms. Watson had already retired one time from the Catahoula Parish school system. Therefore, Dr. Johnson legitimately considered the likelihood of each candidate to remain in the position and the district long-term.

Further, Dr. Johnson's consideration of Ms. Watson's status as a resident of Catahoula Parish as opposed to Franklin Parish was not simply about community relationships, but, rather, was about the likelihood that Ms. Watson would remain in the position. When selecting an individual for a principalship position, consideration as to which candidate is most likely to remain in the position for the long term is a valid and legitimate consideration, as Ms. Watson's own witness, the Superintendent of the Catahoula Parish school system, testified [Lofton Depo., Doc. No. 27-14, p. 2].

The Court additionally notes that Ms. Watson fails to address the other issues that were also considered by Dr. Johnson, including concerns about testing irregularities raised by the

12

Louisiana Department of Education and a lack of discipline raised by the Child Welfare and Attendance Department during Ms. Watson's tenure as assistant principal.

With regard to Mr. Norman's recollection of the meeting between Rev. Grant and Dr. Johnson, Dr. Johnson's explanation comports with Rev. Grant's description of the conversation. Mr. Norman admits his recollection could be faulty. Further, he was a third party to the conversation. Therefore, his recollection cannot be considered competent evidence of pretext. Notably, the one person who could have supported Mr. Norman's recollection of the conversation, Rev. Grant, is not listed as a witness to this matter, despite Ms. Watson's production of Rev. Grant's affidavit. Additionally, the affidavit does not include information supportive of Mr. Norman's testimony. The Court concludes that Mr. Norman's testimony is not sufficient evidence of pretext.

The implication that Dr. Johnson stated to the NAACP that Ms. Watson was not certified is belied by the fact Dr. Johnson has always maintained that while Ms. Watson was certified and qualified, it was his opinion, on the whole, that Mr. McHand was more qualified for the position.

The Court further agrees with the School Board that a side by side comparison of the two candidate's qualifications does not establish that Ms. Watson was clearly better qualified. Although Ms. Watson may have had more certifications, Dr. Johnson could have been justified in finding that Mr. McHand had a superior educational background with respect to the specific position at issue, including his master's degree in educational leadership.

Further, with respect to experience, though the Fifth Circuit recognizes that work experience is one component of an employee's qualifications, it squarely rejects any "attempt to equate years served with superior qualifications." *Moss v. BMC Software, Inc.*, 610

13

F.3d 917, 923 (5th Cir. 2010) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)). The Fifth Circuit has upheld an employer's discretion in promotion decisions and has held that "an employee's 'better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.'" *Martinez v. Tex. Workforce Comm.*, 775 F.3d 685, 688 (5th Cir. 2014) (*quoting Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723) (5th Cir. 2002). Rather, "the qualifications [must be] so widely disparate that no reasonable employer would have made the same decision." *Moss*, 610 F.3d at 923.

Dr. Johnson appropriately relied on more than just each candidate's experience, and instead looked at each candidate as a whole. Dr Johnson further relied on his knowledge of the individuals and their work history. The experience cited by Ms. Watson does not render her "clearly better qualified."

Ms. Watson has failed to carry her burden of showing that Dr. Johnson's proffered reasons for selecting Mr. McHand were pretext for discrimination. A plaintiff's subjective belief that she was the victim of racial discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004).

Finally, for the same reasons set forth above, the Court finds that Ms. Watson's claims against defendants in their official capacity should also be dismissed as duplicative.

### III. CONCLUSION

For these reasons, the Court GRANTS the School Board's Motion for Summary Judgment [Doc. No. 27]. All of Plaintiff Esther Watson's remaining claims are DISMISSED WITH PREJUDICE. All pending motions are DENIED AS MOOT.

Monroe, Louisiana, this 10th day of January 2022.

                                                **TERRY A. DOUGHTY**
                                                **UNITED STATES DISTRICT JUDGE**